IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAYNAQUINN NOSSE,

      Plaintiff,

      v.

MICHEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

12cv1115
ELECTRONICALLY FILED

**MEMORANDUM OPINION RE: PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 8 and 10)**

**I. Introduction**

Plaintiff Dayna Nosse ("Plaintiff") brings the present action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act (the "Act"), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross-motions for summary judgment on the record developed at the administrative proceedings. After careful consideration of the Administrative Law Judge's ("ALJ") decision, the parties' memoranda, and the entire record, the Court will deny Plaintiff's Motion for Summary Judgment (Doc. No. 10) and grant Defendant's Motion for Summary Judgment (Doc No. 8).

**II. Procedural History**

Plaintiff originally filed for DIB and SSI on October 27, 2003,[1] and these claims were denied on April 21, 2004. (R. at 897-99, 901-05). After an unfavorable decision from the ALJ, Plaintiff filed an appeal with the United States District Court.[2] The Honorable Joy Flowers Conti remanded the case, directing the ALJ to address Plaintiff's longitudinal history of mental health treatment and to discuss the medical opinions of Dr. Thuy Bui and Dr. Robert Eisler. (R. at 1024-32). On May 7, 2010, the ALJ issued a decision consistent with Judge Conti's Memorandum Order and found that Plaintiff was not disabled and could perform work. (R. at 985-95). Plaintiff's request for a review of the ALJ's decision by Appeal Council was denied on June 7, 2012. (R. at 961-964). Plaintiff timely filed the instant lawsuit requesting judicial review. Plaintiff and Defendant filed Cross-Motions for Summary Judgment on January 19, 2013. (Doc. Nos. 8 & 10). These Motions are the subject of this Memorandum Opinion.

**III. Statement of the Case**

In a decision dated May 7, 2010, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2005.

2. The claimant has not engaged in substantial gainful activity since August 30, 2000 (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] Plaintiff protectively filed initial DIB and SSI applications on February 24, 2000, alleging disability since October 15, 1999. (R. at 28). These applications were denied on August 29, 2000. (R. at 28-32). Since Plaintiff did not appeal this denial, the Commissioner's decision that Plaintiff was not disabled prior to August 29, 2000, is administratively final. 20 C.F.R. §§ 404.905, 404.987

[2] Plaintiff filed a Request for Review of Hearing Decision on August 31, 2006, which was denied by the Appeals Council on June 20, 2008. (R. at 6-9).

3. The claimant has the following severe impairments: fibromyalgia, joint pain, headaches, depression, and panic disorder (20 C.F.R. § 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she is limited to simple instructions, tasks, and decisions; she can have no more than occasional interaction with supervisors and co-workers; she cannot work with the public; and she cannot work in an environment with strict production quotas, or in a fast paced work environment.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on January 4, 1973, and was 26 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R.§§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined by the Social Security Act, from August 30, 2000, through the date of this decision ((20 C.F.R. §§ 404.1520 and 416.920(g)).

**IV. Standards of Review**

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly

limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the Agency's decision cannot be affirmed on a ground other than that actually relied upon by the Agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the United States Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

**V. Discussion**

In support of her Motion for Summary Judgment, Plaintiff contends that because the ALJ did not give proper weight to the medical opinions of Dr. Bui and Dr. Eisler, the ALJ improperly disregarded these opinions. (Doc. No. 11, 10-13). Plaintiff also argues that the ALJ improperly

6

determined that she has the residual functional capacity to perform sedentary work. (Doc. 11, 13-15). The Commissioner argues that the ALJ's decision is supported by substantial evidence. (Doc. No. 9).

1. *The Medical Opinions of Dr. Bui and Dr. Eisler*

Although the ALJ should afford great deference to the reports of treating physicians, he can reject this evidence when there is contradictory medical evidence on the record. *Plumer v. Afel*, 186 F.3d 422, 429 (3d Cir. 1999). The ALJ may also give more or less weight to a treating physician's opinion "depending upon the extent to which supporting explanations are provided." *Id.* Ultimately, "[t]he ALJ must consider all evidence and give some reason for discounting the evidence she rejects." *Id.* Dr. Bui was Plaintiff's treating physician from 1999-2006. The record is replete with medical records indicating Plaintiff's history of fibromyalgia, joint pain, headaches, depression, endometriosis, anxiety and panic disorder. However, Dr. Bui's medical records also show that Plaintiff has been responding well to her medications and controlling her pain. Starting in 2001, Dr. Bui reported that Plaintiff was "doing well" and that "[h]er headache is controlled, and she does not experience the peak and valley of pain relief or symptom recurrence." (R. at 707). In 2005, Dr, Bui reported that Plaintiff's "pain is better/under control." (R. at 837). These statements are supported by further evidence from Dr. Bernstein. (R. at 863- Plaintiff is "functioning well on her medications," and R. at 871- Plaintiff "does well on her current dose of medications in terms of her functioning.").

The ALJ explained that he gave Dr. Bui's medical opinion great weight when it was consistent with the rest of the medical evidence and little weight when it was contradicted by other medical evidence. (R. at 893). For these reasons, the ALJ gave great weight to Dr. Bui's functional capacity evaluation because it was consistent with other medical evidence on the

record, but gave little weight to Dr. Bui's statements of temporary disability because they were inconsistent with the record. Id.

Dr. Eisler evaluated Plaintiff once on November 8, 2005, and concluded that "[t]his patient is quite unemployable in any job and almost certainly this problem will last a year or more." (R. at 894). However, the ALJ found that this conclusion was inconsistent with the rest of Plaintiff's medical records. (R. at 993). Furthermore, the ALJ found that Dr. Eisler did not support his conclusion with examination findings. Id. For these reasons, the ALJ gave Dr. Eisler's opinion little weight. Id. The ALJ may decide how much weight to give a physician's opinion, and may even reject certain testimony, so long as he explains his reason for discounting such evidence. The ALJ properly considered all of the medical evidence on record and adequately explained why certain opinions were rejected.

2. *Plaintiff's Functional Capacity to Perform Sedentary Work*

An ALJ must consider a plaintiff's symptoms, including pain, in light of the rest of the medical evidence to determine whether the plaintiff is disabled. 20 C.F.R. § 404.1529. An ALJ may not use his own medical judgment to discredit Plaintiff's complaints of pain, but where there is little evidence to support Plaintiff's complaints, and there is evidence that the pain is relieved through medication, the ALJ may decide that there is insufficient evidence to support a finding that Plaintiff is disabled. *Cruz v. Comm'r of Soc. Sec.*, 244 F.Appx. 475, 481 (3d Cir. 2007). Here, Plaintiff testified that her headaches are so debilitating she stays in bed all day. (R. at 1238). She also testified that she is unable to stand or walk for more than 15-20 minutes, write for more than 10 minutes, or lift more than 5-7 pounds because of severe pain. (R. at 1239-1240). These subjective complaints are inconsistent with years of medical evidence on the record, and the ALJ found that while Plaintiff's impairments "could reasonably be expected to

cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . ." (R. at 991). The Court agrees.

To be eligible for benefits, Plaintiff has the burden of showing a medical impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d) (2)(A); 20 C.F.R. §§ 404.1505, 416.905; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1983). Although Plaintiff claims that her pain has prevented her from engaging in gainful activity, the record suggests otherwise. (R. at 1226). For instance, in May 2004, Dr. Bernstein wrote that Plaintiff babysat for "40 hours per week for one family and 25 hours per week for another." (R. at 882). In August 2004, Dr. Bernstein reported that Plaintiff was "working 60 hours per week and caring 36 hours per week for her grandmother." (R. at 878). Throughout the first few months of 2005, Dr. Bernstein reported that Plaintiff was babysitting and taking care of her grandmother for at least 50 hours per week. (R. at 867, 868, 871). In November of that year, Dr. Bui performed a functional capacity evaluation and concluded that Plaintiff is "capable of performing work in the Sedentary category on a part-time basis and progress to full-time." (R. at 889).

Notes such as these are consistent throughout Plaintiff's treatment over the next few years. On June 12, 2007, Dr. Bernstein noted that Plaintiff's "medications are effective. They improve her functioning. She is working as a nanny." (R. at 1090). Three months later, Dr. Bernstein recorded that Plaintiff "tolerates the medications, works full time, and helps to take care of her elderly grandmother." (R. at 1089). In March 2008, Plaintiff reported to Dr. Bernstein that "she [was] feeling stronger emotionally and [was] less depressed." (R. at 1085). In March 2009, Dr. Bernstein reported that Plaintiff is "active at home, babysits quite frequently, is a nanny, and is thinking of going back to school." (R. at 1080). A month later, Dr. Bernstein

9

noted that Plaintiff's "functioning level is high" and that she would begin to taper her medications. (R. at 1079). In August of 2009, Plaintiff was "tolerating this medication decrease fairly well," and was "still trying to be active and babysit during the day and take care of older adults with medical issues." (R. at 1078). Dr. Julie Uran performed a psychological disability evaluation of Plaintiff on March 10, 2010, and assigned a Global Assessment of Functioning (GAF) Score of 50-55, with 50 signifying serious impairment in social, occupational or school functioning and 51-55 signifying moderate impairment in these areas. (R. at 1097-1100).

In light of the foregoing analysis, the ALJ's decision will be affirmed. There is substantial evidence on the record to support the ALJ's finding that Plaintiff can perform limited sedentary work and is therefore not disabled.

## VI. Conclusion

The record is replete with evidence that Plaintiff's mental and physical impairments are relieved through medication and that she maintains a high enough level of functioning to perform limited sedentary work in the national market. The ALJ thoroughly explained the record and his reasons for adopting or rejecting physicians' opinions. Therefore, his decision is supported by substantial evidence and will be AFFIRMED.

An appropriate Order follows.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

cc:     All Registered ECF Counsel and Parties

10